IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

WILLIAM HINES                                                                    PLAINTIFF

v.                                                                    No. 1:08CV306-GHD-DAS

SUSAN BAKER, "UNKNOWN" GRIFFIN,
"UNKNOWN" PRICE, TONY CARLTON,
and "UNKNOWN" LINDA                                                              DEFENDANTS

## REPORT AND RECOMMENDATIONS

A hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), was held in this case on March 16, 2009, to determine if there exists a justiciable basis for plaintiff's claims filed pursuant to 42 U.S.C. §1983. An *in forma pauperis* complaint may be dismissed if it is determined that the allegation of poverty is untrue, or if the action or appeal is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

The plaintiff alleges he became sick around 7:00 a.m. on the morning of December 23, 2007, while confined at the Lee County- Tupelo Adult Jail. He testified that from the window of his cell, he and his cellmate were able to get the attention of Officer Clifton in the tower. When Clifton noticed that the plaintiff looked pale, he called Sergeant Baker. When Baker arrived, Clifton asked if she wanted him to call an ambulance. Baker said no and that she would call the nurse instead. According to the plaintiff, the nurse never came. However, Medical Officer Price

came and checked his pulse and heart beat. The plaintiff said by this time he was drenched in sweat and experiencing shortness of breath. Price told Baker that "something was wrong" because the plaintiff 's pulse was fast and his heart "was not beating right." The plaintiff told the officers that he experienced the same symptoms during his first heart attack. Despite this, the officers left. The plaintiff said Baker later came back and told him that if he died, she would come back for his body. Baker left again.

After an hour or two, the plaintiff began to beat on the window of his cell in order to get Clifton's attention. Clifton called Baker a second time. Baker arrived with Officer Griffin. According to the plaintiff, both Griffin and Baker said there was nothing wrong with him, and Baker told the plaintiff and his cellmate that if they went to the window again, she would spray them with pepper spray. The plaintiff said he then lay down on his mat for fear of being sprayed. After sometime had passed, the inmates summoned Clifton from the window again; and Clifton called Baker a third time. When Baker arrived, she warned Clifton not to call her again. According to the plaintiff, during a shift change, around 8:30 p.m., an unidentified female officer opened the cell door and asked him to come out. She also called the paramedics, and the plaintiff was taken to a hospital where he was told he had suffered a heart attack and was taken to surgery. The plaintiff said that during the entire ordeal, his nitroglycerin pump was being kept in the tower, and an unknown officer ("John Doe 1"), refused to give it to him.

The plaintiff further testified that when he returned to the prison a week later, he was placed in a different cell with six other inmates. He said the cell was designed for only two

inmates, and he was given a mat to sleep on the floor. He was housed under these conditions for about two weeks and then moved back to his original cell. Also during this time, the plaintiff asked for grievance forms to report the medical incident. He said Captain Tony Carlton refused to give him the forms.

The plaintiff has named as defendants Baker, Griffin, Price, Carlton, an unknown lieutenant ("John Doe 2"), and Officer Linda. According to the complaint, John Doe 2 and Officer Linda both worked with Carlton. However, the plaintiff has failed to allege any wrong doing on the part of these individuals. The plaintiff testified that he did not name John Doe 1, the tower officer, because he did not know his name.

*Delay/Denial of Medical Treatment*

It is clear that the constitutional rights of a pretrial detainee may be violated if his serious medical needs are met with deliberate indifference on the part of prison officials. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). In this case, the plaintiff has stated a cognizable claim against Defendants Baker, Griffin, Price, and John Doe 1 for delayed and/or denial of adequate medical treatment. Accordingly, at least at this point, the claim should be allowed to proceed as to these defendants.

*Inadequate Bedding/Overcrowded Cell*

The plaintiff complains he was forced to sleep on a mat on the floor in an overcrowded cell for approximately two weeks after he returned from the hospital. When a pretrial detainee challenges the conditions of his confinement, his claims are analyzed under the Fourteenth

3

Amendment. With respect to such claims, the United States Fifth Circuit Court of Appeals has held:

> In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court evaluated the constitutionality of conditions of confinement of pretrial detainees. Because they have not yet been convicted of the crime with which they have been charged, pretrial detainees have a due process right not to be punished for that crime. The Supreme Court has stated that the distinction between conditions that may be imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:
>
>> [T]he State does not acquire power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.
>
> *Ingraham v. Wright,* 430 U.S. 651, 671-72 n. 40, 97 S.Ct. 1401, 1412-14 n. 40, 51 L.Ed.2d 711 (1977). Courts deciding the constitutionality of conditions of confinement of pretrial detainees must determine whether the conditions complained of are imposed for the purpose of punishment. *Bell,* 441 U.S. at 538, 99 S.Ct. at 1873. Courts may find a punitive purpose upon direct proof of an expressed intent by detention facility officers to punish the pretrial detainee for a crime with which the detainee has been charged but not yet convicted. *Id.* at 538, 99 S.Ct. at 1873-74. In addition, courts may infer a punitive purpose if the challenged condition or restriction is not reasonably related to a legitimate governmental objective. *Id.* at 539, 99 S.Ct. at 1874.

*Hamilton v. Lyons*, 74 F.3d 99, 104 (5th Cir.1996) (footnotes omitted).

The plaintiff has failed to allege that the purported violation resulted from an official policy or custom, as is necessary for an official-capacity claim, or from some individual's personal involvement, as is required for an individual-capacity claim. However, the court finds that, at least at this point, this claim should be allowed to proceed. The plaintiff will be allowed an opportunity to amend his complaint to name any individual he believes is liable for this claim.

4

*Denial of Grievance Procedure*

To the extent the plaintiff claims he was denied access to the courts because prison officials failed to allow him to file an administrative grievance, the claim should be dismissed. Interference with the right to access to the courts is actionable under § 1983 only where the prisoner demonstrates "actual injury stemming from defendants' unconstitutional conduct." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). In this case, the plaintiff has alleged no injury.

Additionally, to the extent the plaintiff claims he had a protected liberty interest in filing grievances or that he was denied due process, his claim fails as well. A prisoner has no constitutional right to an effective grievance process. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Therefore, to the extent the plaintiff seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, his claim should be dismissed as frivolous. Accordingly, Defendants Carlton, John Doe 2, Officer Linda should be dismissed.

**Recommendation**

Therefore, it is my recommendation that the plaintiff's medical claim and conditions of confinement claims be allowed to proceed as discussed above. However, it is further recommended that his grievance procedure claim and Defendants Carlton, John Doe 2, and Officer Linda be dismissed with prejudice.

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within ten days

of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this 14th day of September, 2009.

                                             **/s/   David A. Sanders**
                                             **UNITED STATES MAGISTRATE JUDGE**